1  Robert B. Carey #011186
   Donald Andrew St. John #024556
2  Camille S. Bass #026671
   **HAGENS BERMAN SOBOL SHAPIRO LLP**
3  11 West Jefferson Street, Suite 1000
   Phoenix, Arizona 85003
4  Telephone: (602) 840-5900
   Facsimile: (602) 840-3012
5  E-Mail: rcarey@hbsslaw.com
   E-Mail: andy@hbsslaw.com
6  E-Mail: camilleb@hbsslaw.com

7  Steve W. Berman (WSBA #12536)
   **HAGENS BERMAN SOBOL SHAPIRO LLP**
8  1918 8th Avenue, Suite 3300
   Seattle, Washington 98101
9  Telephone: (206) 623-7292
   Facsimile: (206) 623-0594
10 E-Mail: steve@hbsslaw.com

11 [Additional Counsel Listed on Signature Page]

12 *Attorneys for Plaintiff*

13                    UNITED STATES DISTRICT COURT

14                         DISTRICT OF ARIZONA

| | |
|---|---|
| EMILY ROSE WINGER, a single woman, on behalf of herself and all others similarly situated, | No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| BEST BUY CO., INC., a Minnesota corporation d/b/a Best Buy Co. of Minnesota, Inc.; BEST BUY STORES LIMITED PARTNERSHIP, a Virginia limited partnership; and BESTBUY.COM, LLC, a Delaware limited liability company, | |
| Defendants. | |

010159-11 366976 v1

Plaintiff Emily Rose Winger, by and through her attorneys, alleges for her class-action complaint, upon personal knowledge as to her own acts, and upon information and belief (based on the investigation of counsel) as to all other matters, as follows:

## I. NATURE OF THE ACTION

1. Plaintiff brings this action against Best Buy Co., Inc (doing business in Arizona as "Best Buy Co. of Minnesota, Inc."); Best Buy Stores Limited Partnership; and BestBuy.com, LLC (collectively "Best Buy" or Defendants) as a class action pursuant to Rules 23(a) and 23(b)(2) and (b)(3) on behalf of herself and a nation-wide class of all others similarly situated, who purchased Insignia car speakers advertised and represented to contain a certain number of drivers, but which were in truth manufactured with a false driver and thus were not as advertised.

## II. THE PARTIES

2. Plaintiff is a resident of Arizona, and resides at 7330 E. Milagro, Mesa, AZ 85207.

3. Best Buy Co., Inc. is a Minnesota corporation with its principal executive office in Richfield, Minnesota, doing business in Arizona as "Best Buy Co. of Minnesota, Inc."

4. Best Buy Stores Limited Partnership is a Virginia Limited Partnership with its principal place of business in Richfield, Minnesota, and is a subsidiary of Best Buy Co., Inc.

5. Bestbuy.com, LLC is a Delaware Limited Liability Company, with its principal place of business in Richfield, Minnesota, and is a subsidiary of Best Buy Co., Inc.

6. Collectively, Best Buy operates a nation-wide chain of electronics retail stores, describing itself as "the world's largest specialty consumer electronics retailer." (http://www.bestbuyinc.com/; last visited October 17, 2009.)

### III. JURISDICTION

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under federal law.

8. The Court has personal jurisdiction over all parties in that Plaintiff consents to the jurisdiction of this Court, and Defendants regularly conduct business in the state of Arizona and have marketed and sold the speakers at issue in this case in the state of Arizona both in retail stores and on the Best Buy website.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 because Plaintiff purchased the speakers at issue in this District, and because Defendants regularly conduct business in interstate trade and commerce in this district, are all subject to personal jurisdiction in this District, and have conducted activities in furtherance of the scheme alleged herein to defraud customers in this District.

### IV. STATEMENT OF FACTS

10. Plaintiff purchased a set of Insignia "3-way" speakers, model number NS-S6000 for $90.85 on March 4, 2010.

11. Insignia is a trademark of Best Buy Enterprise Services, Inc., which in turn is a wholly-owned subsidiary of Best Buy Co., Inc. The Insignia brand is also referred to as a Best Buy Exclusive Brand, and, upon information and belief, is manufactured by Best Buy Enterprise Services, Inc. for Best Buy.

12. Best Buy has sold two models of Insignia Car Speakers advertised to be 3-way, including the NS-S6000 purchased by Plaintiff and the NS-S5250.

13. Best Buy made representations that these models were 3-way speakers.

14. A 3-way speaker is one in which the sound is "split" in three ways, with three drivers to reproduce the sounds within those three ranges.

15. However, in reality, the Insignia speakers sold as 3-way speakers were only 2-way speakers. The highest range "driver" was actually non-functioning plastic replica, as shown in the photograph below of the disassembled speakers:



16. Unlike the microtweeters, or highest range drivers, in later models, the fake "drivers" in the Insignia 3-way speakers Plaintiff purchased were not wired or capable of producing any sound, as shown in this comparison photograph:



17. Model NS-S6000 is a six and one-half inch speaker advertised as 3-way on its box (highlighted in the red rectangles):





010159-11 366976 V1

18. Model NS-S6000 is also described as a 3-way speaker on Insignia's website, as shown in the following screen shots from the Insignia website. *See* http://www.insigniaproducts.com/products/car/NS-S6000.html (last visited February 16, 2010) (red rectangles added):





19. Best Buy also sold Model NS-S5250, a five and one-quarter inch car speaker also described as a 3-way speaker on the box.

20. Model NS-S5250 is also described as a 3-way speaker on Insignia's website, as shown in the following screen shots from the Insignia website. *See* http://www.insigniaproducts.com/products/car/NS-S5250.html (last visited February 16, 2010) (red rectangles added):





010159-11  366976 V1

21. Upon information and belief, Best Buy introduced these models in approximately 2001.

22. While both models of 3-way car speakers are now shown to be "Discontinued" on the website www.insigniaproducts.com, Best Buy sold the 3-way speakers online through its outlet store on www.overstock.com as recently as April 16, 2009, and still represented them to be 3-way speakers at that time. *See* http://auctions.overstock.com/Insignia-NS-S6000-6-1-2in-3-Way-Car-Speakers-Pair-/Consumer-Electronics/item/44770348 (last visited February 16, 1020) (red rectangles added):



23. Upon information and belief, these speaker models were both manufactured containing at least one fake speaker or driver, and thus, were not 3-way speakers as advertised in the labeling, packaging and advertising.

24. Upon information and belief, Best Buy and Best Buy Enterprise Services, Inc. contracted with Peiying Electro-Acoustic Co., Ltd., in Shenzhen, Guangdong, China ("Peiying Electro-Acoustic") to manufacture the Insignia speakers.

25. Upon information and belief, Best Buy designed or had significant input into the design of the two speaker models and provided the designs, plans, specifications, schema and other information for manufacturing to Peiying Electro-Acoustic, as is the common practice in the industry.

26. Upon information and belief, Best Buy monitored and supervised the manufacturing of the speakers, as is the common practice in the industry.

27. Upon information and belief, Best Buy was involved in periodic quality-control inspections to monitor manufacturing performance and to ensure conformance to the agreed-upon specifications of the speakers, as is the common practice in the industry.

28. Upon information and belief, Best Buy has received a high level of returns on the speakers falsely represented to be 3-way speakers, and would be prompted to investigate the quality of the speakers in order to identify the problem of the false driver.

29. Best Buy, Best Buy Enterprise Services, Inc., and Peiying Electro-Acoustic had a common purpose to defraud consumers for the purpose of making money by falsely representing 2-way speakers to be 3-way speakers, and acted together as an organization to do so.

30. Best Buy together with Best Buy Enterprise Services, Inc. and Peiying Electro-Acoustic formed a scheme to defraud consumers by falsely representing 2-way speakers to be 3-way speakers in Best Buy stores and on its various websites and other sales medium.

010159-11 366976 V1

31. Best Buy used the United States wires in furtherance of its scheme to defraud customers, in particular by making false representations over the internet on its own websites and on third-party websites that the speakers were 3-way speakers.

32. Best Buy also used the United States mails in furtherance of its scheme, in particular by relying on the mails to communicate within its subsidiaries and with Peiying Electro-Acoustic in furtherance of this scheme and to communicate with consumers that the speakers were 3-way speakers.

33. Best Buy specifically intended its misrepresentations to deceive consumers.

34. The Best Buy family of brands and partnerships collectively generates more than $45 billion in annual revenue.  (http://phx.corporate-ir.net/phoenix.zhtml?c=83192&p=irol-newsArticle&ID=1331850&highlight=; last visited October 17, 2009.)

35. Best Buy operates over 1,000 retail stores across the country as well as a retail website, www.bestbuy.com.  It also operates retail stores and websites under the brand names Five Star, Future Shop, Geek Squad, Magnolia Audio Video and Speakeasy.

36. Best Buy operates approximately 27 stores in Arizona.

## V.   CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action against Best Buy as a class action pursuant to Rules 23(a) and 23(b)(2) and (b)(3).  This action may properly be maintained as a class action because it satisfies the numerosity, typicality, adequacy, predominance and superiority requirements of Rule 23.

38. "The Class" proposed consists of all individuals who purchased Insignia car speakers that contain fewer functioning drivers than specified in the labeling and packaging.  The definition of the class will be refined after discovery reveals all the models for which this practice was employed.

39. The requirements of subparts 23(a), (b)(2) and (b)(3) are met as follows:

**A.     Numerosity**

40.     Although the exact size of the class is unknown, Plaintiff believes the class numbers at least in the hundreds of thousands.

**B.     Commonality**

41.     There are numerous questions of law and fact common to the class, including, but not limited to:

    a.     whether Best Buy represented to the public at large that the Insignia speakers were 3-way speakers;

    b.     whether the Insignia speakers were in fact 3-way speakers;

    c.     whether Best Buy's representations concerning the specifications of the Insignia speakers were false or misleading statements or misrepresentations;

    d.     whether Best Buy made those statements with the intent to deceive and defraud consumers;

    e.     whether Best Buy used the United States mails and wires in furtherance of its scheme to defraud; and

    f.     whether Best Buy violated federal statutes with its conduct.

**C.     Typicality**

42.     Plaintiff's claims are typical of the claims of the class as a whole.  Plaintiff has the same interests in this matter as all other members of the class, and her claims are typical of all members of the class.  Plaintiff and all class members have sustained damages arising out of Best Buy's false and misleading representations concerning the Insignia speakers' quality and construction, and its violations of federal statutes.

**D.     Adequacy**

43.     Plaintiff will fairly and adequately protect the interests of the class.  The interests of Plaintiff are coincident with, and not antagonistic to, those of the remainder of the class.  Plaintiff is committed to pursuing the action and has obtained counsel experienced and qualified to prosecute this action and class actions generally.

010159-11 366976 V1

**E.     Common Questions Predominate, and the Class Action Device Is Superior**

44.     Prosecution as a class action will eliminate the possibility of repetitious litigation, while also providing redress of claims too small to support the expense of individual claims.

45.     Class treatment is also appropriate because Best Buy has acted uniformly with respect to all class members in that it has made uniform misrepresentations to the class and the public at large.

46.     Further, the questions of law and fact common to the members of the class predominate over any questions affecting any individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between class members and Best Buy.

47.     Joinder of all class members who are geographically dispersed and number, upon information and belief, in the hundreds of thousands is impracticable.  Furthermore, the expense and burden of individual litigation makes it impractical to redress the wrong done to them on an individual-by-individual claim basis.  Upon information and belief, members of the class are not already engaged in litigation concerning this controversy.  This is a desirable forum, as it is home to a large number of class members.

## VI.     CAUSES OF ACTION

**FIRST CAUSE OF ACTION – VIOLATION OF 18 U.S.C. § 1962(C)**

48.     Plaintiff realleges the preceding paragraphs as if fully set forth herein.

49.     This claim, which alleges substantive violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as provided in 18 U.S.C. §§ 1962(c) and 1964, is asserted against Defendants on behalf of the Class.

50.     Plaintiff, members of the Class, and all Defendants are each "persons" as that term is defined by in 18 U.S.C. § 1961(3).

51.     The RICO "enterprise" is an association-in-fact consisting of all Defendants and Best Buy Enterprise Services, Inc. and Peiying Electro-Acoustic.  The Enterprise is an ongoing and continuing business organization consisting of both

corporations and individuals that are and have been associated for the common or shared purposes of manufacturing and selling speakers and other audio equipment. Members of this Enterprise operate businesses that perform services distinct from the pattern of racketeering alleged herein.

52. The Enterprise engages in, and its activities affect, interstate commerce and has an existence apart from the racketeering acts set forth herein.

53. While all Defendants participate in and are members and part of the Enterprise, they also all have an existence separate and distinct from the Enterprise.

54. Defendants operate and control the Enterprise, in that Best Buy Co., Inc. and Best Buy Enterprise Services, Inc., upon information and belief, together controlled the design and manufacture of the speakers, contracting with Peiying Electro-Acoustic. With Best Buy's tacit or express approval, the speakers were manufactured with a false driver. Best Buy Co., Inc. then worked with Best Buy Stores, L.P., BestBuy.com, LLC, and Peiying Electro-Acoustic to advertise and sell those speakers as 3-way speakers, in spite of their knowledge that the speakers were not as advertised.

55. The foregoing evidences that all Defendants are willing participants in the Enterprise, had a common purpose and interest in the establishment and operation of the foregoing scheme to defraud customers, and agreed to a structure wherein Defendants and Peiying Electro-Acoustic could defraud consumers by falsely representing the nature of the speakers.

56. The Enterprise engaged in and affected interstate commerce because it engaged in the following activities across state boundaries: Peiying Electro-Acoustic, at Best Buy's request and/or with Best Buy's tacit approval, made speakers for Best Buy Co., Inc. and Best Buy Enterprise Services, Inc., with a false driver that would allow the speakers to be falsely advertised as 3-way speakers but manufactured at dramatically lower costs; Best Buy Co., Inc. and Best Buy Stores, L.P. shipped and sold the speakers falsely represented to be 3-way speakers through a nation-wide chain of stores; Best Buy

1 Co., Inc. and BestBuy.com, LLC shipped and sold the speakers falsely represented to be 3-way speakers to consumers nation-wide over the internet.

57. Defendants' illegal conduct and wrongful practices were carried out by an array of employees, working across state boundaries, who necessarily relied upon frequent transfers of documents, information, products and funds by the U.S. mails and interstate wire facilities.

58. The nature and pervasiveness of the scheme, which was orchestrated out of Best Buy's corporate offices, necessarily required those offices to communicate directly and frequently with each other, with Best Buy Enterprise Services, Inc., with Peiying Electro-Acoustic, with its retail stores across the nation, and with consumers by the U.S. mails and by interstate wire facilities.

59. Many of the precise dates of Defendants' uses of the U.S. mails and interstate wire facilities (and corresponding RICO predicate acts of mail and wire fraud) have been hidden and cannot be alleged without access to Defendants' books and records. However, Plaintiff can identify with particularity the scope and nature of the misrepresentations made with regard to the specific model numbers of speakers and the specific misrepresentations made, as described below.

60. Defendants and Best Buy Enterprise Services, Inc. and Peiying Electro-Acoustic intentionally manufactured two models of speakers with a fake driver; thus the speakers were made to look like 3-way speakers when they were actually only 2-way speakers.  Both Model NS-S6000 and Model NS-S5250 were falsely represented in advertisements, packaging and over the internet to be 3-way speakers when in fact they were 2-way speakers, as shown in ¶¶ 15-26, *supra*.  Use of the U.S. mails and interstate wire facilities occurred on hundreds if not thousands of occasions where the Defendants communicated among themselves and with Best Buy Enterprise Services, Inc. and Peiying Electro-Acoustic concerning the manufacture, distribution and sale of these speakers.  Additional uses of the U.S. mails and interstate wire facilities occurred when Defendants advertised, shipped and sold the speakers to consumers as 3-way speakers

through its nation-wide chain of retail stores and its website, despite knowing they had been manufactured with a fake driver and thus were only 2-way speakers.

61. Each of the Defendants conducted and participated in the affairs of the above-referenced Enterprise through a pattern of racketeering activity, including acts that are indictable under 18 U.S.C. § 1341, relating to mail fraud, and 18 U.S.C. § 1343, relating to wire fraud. The Defendants' pattern of racketeering likely involved thousands of separate instances of use of the U.S. mails or interstate wire facilities in furtherance of their scheme. Each of these fraudulent mailings and interstate wire transmissions constitutes a "racketeering activity" within the meaning of 18 U.S.C. § 1961(1)(B). Collectively, these violations constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), in which the Defendants intended to defraud Plaintiff and Class members and other intended victims.

62. The Defendants' racketeering activities amounted to a common course of conduct, with similar pattern and purpose, intended to defraud customers by selling 2-way speakers as 3-way speakers. Each separate use of the U.S. mails and/or interstate wire facilities employed by the Defendants was related, had similar intended purposes, involved similar participants and methods of execution, and had the same results affecting the same victims, including Plaintiff and members of the Class. Each Defendant has engaged in the pattern of racketeering activity for the purpose of conducting the ongoing business affairs of the Enterprise and has profited from those activities.

63. The Defendants' violations of federal law and their pattern of racketeering activity have directly and proximately caused Plaintiff and members of the Class to be injured in their business or property because Plaintiff and the Class overpaid for their speakers, and were misled into purchasing 2-way speakers with a fake driver instead of the 3-way speakers they believed they were purchasing.

64. Under the provisions of Section 1964(c) of the RICO statute, the Defendants are jointly and severally liable to Plaintiff and the Class for three times the

damages that Plaintiff and the Class have sustained, plus the costs of bringing this suit, including reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A.   Certify this case as a class action on behalf of a nation-wide class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and appoint Plaintiff as the class representative and Plaintiff's undersigned counsel as class counsel;

B.   Adjudge and decree that Defendants' conduct as described herein violated 18 U.S.C. § 1962(c).

C.   Award compensatory damages in amounts to be determined at trial or, where applicable, to the fullest extent allowed by law.

D.   Award statutory damages in amounts to be determined at trial or, where applicable, to the fullest extent allowed by law.

E.   Award interest to Plaintiff to the fullest extent allowed by law.

F.   Award Plaintiff the costs of bringing this action, including the payment of reasonable attorneys' fees; and

G.   Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests trial by jury for all legal claims.

DATED April 27, 2010.

                                            HAGENS BERMAN SOBOL SHAPIRO LLP

By   /s/Robert B. Carey
Robert B. Carey #011186
Donald Andrew St. John #024556
Camille S. Bass #026671
11 West Jefferson Street, Ste. 1000
Phoenix, AZ  85006
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

010159-11 366976 V1

Steve W. Berman, WSBA #12536
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

THE CAREY LAW FIRM
Megan E. Waples, CSBA #38381
2301 E. Pikes Peak
Colorado Springs, CO 80909
Telephone: (719) 635-0377
Facsimile: (719) 635-2920
Email: mwaples@careylaw.com

*Attorneys for Plaintiff*

010159-11  366976 V1