**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emily Rose Winger,<br>Plaintiff,<br>vs.<br>Best Buy Co., Inc., et al.<br>Defendants. | No. CV 10-923-PHX-MHM<br>**ORDER** |

Pending before the Court is Defendants Best Buy Co., Inc.'s, Best Buy Stores Limited Partnership's, and BestBuy.com LLC's (collectively "Best Buy's") Motion to Dismiss Plaintiff Emily Rose Winger's Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 33) The Court has reviewed the motion, Plaintiff's response, Best Buy's reply, as well as Plaintiff's notice of supplemental authority, and now enters its ruling.

**I. Background**

Plaintiff alleges the following in her Amended Complaint. (Doc. 32) Best Buy operates a nation-wide chain of electronics retail stores, describing itself as "the world's largest specialty consumer electronics retailer." (Id. ¶ 6) Plaintiff purchased, on two different occasions, a set of Insignia speakers, model number NS-S6000, advertized to be "3-way speakers." Plaintiff purchased one set at the Best Buy store at 5051 East Ray Road,

Phoenix, Arizona, in December 2007. Plaintiff purchased a second set on March 4, 2010, from the internet. (Id. ¶ 10) Insignia is a Best Buy house brand, sold exclusively through Best Buy. (Id. ¶ 11)

Best Buy sold two models of Insignia Car Speakers advertised to be 3-way: the NS-S600 model purchased by Plaintiff and the NS-S5250 model. Best Buy made representations that these models were 3-way speakers. (Id. ¶ 12)

A 3-way speaker is one in which the sound is "split" in three ways, with three drivers to reproduce the sounds within those three ranges. (Id. ¶ 13) The more drivers contained in a speaker, the higher fidelity sound it produces, and the more it costs to produce and purchase. Thus, a three-way speaker system can support a higher price in the market than a 2-way system using equivalent-quality components. (Id. ¶ 14) Here, although the speakers were sold as 3-way speakers, they were in reality only 2-way speakers. (Id. ¶ 15) The highest range "driver" was actually a non-functioning plastic replica and thus was not capable of producing any sound. (Id. ¶¶ 15-16)

Best Buy sold model number NS-S5250, which was described as a 3-way speaker, on Insignia's website. This model also contained a fake driver. (Id. ¶¶ 19-20, 23) In addition, Best Buy sold various models of speakers as "4-way speakers" that also had fewer drivers than represented by the "4-way" labeling, and thus were falsely represented in the same way as the 3-way speakers. (Id. ¶ 24)

Best Buy and Best Buy Enterprise Services, Inc. contracted with Peiying Electro-Acoustic Co., Ltd. ("Peiying Electro-Acoustic"), in Shenzhen, Guangdong, China, to manufacture the Insignia speakers. (Id. ¶ 25) Best Buy had significant involvement in the design, manufacture, and quality control of the speakers. (Id. ¶¶ 26-28) Best Buy, Best Buy Enterprise Services, Inc., and Peiying Electro-Acoustic had a common purpose to defraud consumers for the purpose of making money by falsely representing 2-way speakers to be 3-way speakers, and acted together as an organization to do so. Best Buy, together with Best Buy Enterprise Services, Inc. and Peiying Electro-Acoustic, formed a scheme to defraud consumers by falsely representing 2-way speakers to be 3-way speakers in Best Buy stores

and on its various websites and other sales medium. (Id. ¶¶ 30-31)

Best Buy used the United States wires in furtherance of its scheme to defraud by making false representations over the internet on its own website and on third-party websites that the speakers were 3-way speakers. (Id. ¶ 32) Best Buy also used the United States mails in furtherance of its scheme, in particular by relying on the mails to communicate within its subsidiaries and with Peiying Electro-Acoustic in furtherance of this scheme and to communicate with consumers that the speakers were 3-way speakers. (Id. ¶ 33) Best Buy specifically intended its misrepresentations to deceive consumers. (Id. ¶ 34)

Plaintiff claims that Best Buy's conduct violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Best Buy moves to dismiss Plaintiff's Amended Complaint.

## II. Standard of Review

### A. Rule 8, Federal Rules of Civil Procedure

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A claim must be stated clearly enough to provide each defendant fair opportunity to frame a responsive pleading. McHenry v. Renne, 84 F.3d 1172, 1176 (9th Cir. 1996).

### B. Rule 12(b)(6), Federal Rules of Civil Procedure

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id. This plausibility standard "'does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to prove [the] claim." al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009) (quoting Twombly, 550 U.S. at 556).

If the court finds that the Plaintiff does not allege enough facts to support a cognizable legal theory, the court may dismiss the claim. The court must then decide whether to grant leave to amend. A court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178 (1962). Generally, leave to amend is denied only when it is clear the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

## III. Discussion

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. 1962(c) (2009). It allows for civil remedy, authorizing private actions by "any person injured in his business or property by reason of a violation of [RICO] section 1962." 18 U.S.C. 1964(c). To state a claim under section 1962 of RICO, a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." Walter v. Drayson, 538 F.3d 1244, 1247 (9th Cir.2008); see also Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). Racketeering activity includes mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. 18 U.S.C. § 1961(1). In creating RICO, Congress expressly admonished that its terms were to be "liberally construed to effectuate its remedial purposes." Odom, 486 F.3d at 547 (quoting Sedima, 473 U.S. at 497-98).

### A. Standing

Best Buy argues that Plaintiff lacks standing under RICO because her Amended Complaint fails to allege proximate causation between Best Buy's supposed misrepresentation and her injury and fails to allege a concrete financial loss. See Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086-87 (9th Cir. 2002).

**1. Proximate Causation**

To establish proximate causation, a plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992). Best Buy argues that Plaintiff has failed to allege proximate causation because "[a]ll [Plaintiff] alleges is that she purchased a set of Insignia speakers in December 2007 from a Best Buy store and purchased a second set of speakers on March 4, 2010 'from the internet' [w]ith "no allegations other than mere purchases that tie any injury to Best Buy's alleged acts . . . ." To the contrary, Plaintiff alleges that Best Buy misled her into purchasing 2-way speakers with a phony driver instead of the 3-way speakers she believed she was purchasing and, as a result, she paid too much. (Doc. 32 ¶ 10, 12-16, 61, 64)

To the extent that Best Buy contends that the holding of the Supreme Court in Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639 (2008) requires Plaintiff to plead reliance in order to maintain her RICO claim, the Court in Bridge did not adopt such a rule at the pleading stage. See Johnson v. KB Home, 720 F. Supp. 2d 1109, 1119 (D. Ariz. 2010) (citing Bridge, 553 U.S. at 658). Accordingly, the Court finds that Plaintiff has sufficiently alleged proximate causation.

**2. Concrete Financial Loss**

A showing of injury for a civil RICO claim "requires proof of concrete financial loss, and not merely injury to a valuable intangible property interest." Steele v. Hosp. Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994). Best Buy argues that Plaintiff "does not claim that she paid more because of Best Buy's alleged misrepresentation." Best Buy contends that "Plaintiff's allegation that, generally, a 3-way speaker 'can support a higher price in the market' is insufficient to establish a concrete financial loss." Plaintiff, however, alleges more

in this regard. As discussed above, Plaintiff alleges that Best Buy falsely marketed and promoted its 2-way Insignia speakers as a superior 3-way system, going so far as to build in an alleged phony third driver. Plaintiff alleges that she was misled by Best Buy's misrepresentations, causing her to overpay for her speakers. As such, the Court finds that Plaintiff has sufficiently alleged a concrete financial loss. See Forsyth v. Humana, Inc., 114 F.3d 1467, 1482 (9th Cir. 1997) (overpayment constitutes actionable financial harm), aff'd, 525 U.S. 299 (1999). The Court finds that Plaintiff has adequately alleged that Best Buy's misrepresentations proximately caused her to suffer a concrete financial loss, and thus Plaintiff has standing to assert her RICO claim.

**B. 18 U.S.C. § 1962© - Pattern of Racketeering Activity**

Section 1962(c) of the RICO statute requires a plaintiff to prove that a defendant participated in an illegal enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1962(c); Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1398 (9th Cir. 1986). This "pattern" must consist of at least two predicate acts of racketeering in the last ten years. 18 U.S.C. § 1961(5). Racketeering activity includes the predicate acts of mail and wire fraud. 18 U.S.C. § 1961(1). The circumstances of RICO predicate acts must be stated with particularity under Fed. R. Civ. P. 9(b), specifically describing "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Schreiber, 806 F.2d at 1401.

To allege a violation of the mail fraud statute or claim wire fraud, "it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or wires or caused a use of the United States mails or wires in furtherance of the scheme; and (3) the defendants did so with specific intent to deceive or defraud." Schreiber, 806 F.2d at 1399-1400.

**1. Predicate Acts**

Best Buy argues that Plaintiff's allegations do not establish the required "pattern" of racketeering activity. Best Buy contends the Amended Complaint lacks the specificity required by Rule 9(b) by failing to identify Best Buy's particular uses of interstate mail and

wires. Best Buy asserts that the complaint "fails to identify a single instance of fraudulent use of the U.S. mails or interstate wire facilities in furtherance of a scheme to defraud" and thus falls short of Rule 9(b)'s particularity requirement.

For purposes of mail and wire fraud, the only aspects that "require particularized allegations are the factual circumstances of the fraud itself." Odom, 486 F.3d at 554. Here, Plaintiff's Amended Complaint identifies the alleged phony product and false advertising that appear on the product packaging, Insignia's website, and on the website of Best Buy's outlet store. By identifying two retail websites operated by Best Buy that misrepresented the phony speaker sets, the Amended Complaint alleges specific instances of uses of interstate wire communication facilities.

Plaintiff further alleges that Defendants communicated among themselves via U.S. mail and interstate wire facilities to further their deceptive scheme. (Doc. 32 ¶ 61) Plaintiff alleges that Defendants' illegal conduct and wrongful practices were carried out by an array of employees, working across state boundaries, who necessarily relied upon frequent transfers of documents, information, products and funds by the U.S. mails and interstate wire facilities. (Id. ¶ 58) The nature and pervasiveness of the scheme, which was orchestrated out of Best Buy's corporate offices, necessarily required those offices to communicate directly and frequently with each other, with Best Buy Enterprise Services, Inc., with Peiying Electro-Acoustic, with its retail stores across the nation, and with consumers by the U.S. mails and by interstate wire facilities. (Id. ¶ 59) Plaintiff also alleges that "[m]any of the dates of Defendants' uses of the U.S. mails and interstate wire facilities . . . have been hidden and cannot be alleged without access to Defendants' books and records, which are within Defendants' exclusive control. (Id. ¶ 60)

Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Odom, 486 F.3d at 555 (quoting Schreiber, 806 F.2d at 1400). Here, the allegations in the Amended Complaint adequately identify the circumstances constituting fraud, thus there is no apparent reason to find that Defendants will be unable to prepare an adequate answer. The Court finds that

Plaintiff's allegations of the circumstances of mail and wire fraud are sufficient to satisfy the pleading requirements of Rule 9(b).

**2. Fraudulent Intent**

Best Buy contends that Plaintiff has "fail[ed] to allege fraudulent intent with the particularity required by Rule 9(b)." Rule 9(b), however, does not require that intent be alleged with particularity: "While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind–or scienter–of the defendants may be alleged generally." Id. at 554 (citing In re GlenFed, Inc. Sec. Litig. 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc)) ("We conclude that plaintiffs may aver scienter generally, just as the rule states–that is, simply by saying that scienter existed."). Plaintiff alleges that Best Buy "specifically intended its misrepresentations to deceive consumers." (Id. ¶ 34) Plaintiff further alleges that Best Buy sold the 2-way speakers under its house brand; the speakers contained a phony driver; Best Buy marketed these 2-way speakers as 3-way speakers and did so for nearly a decade. (Id. ¶¶ 15-24) As such, the Court finds that Plaintiff has adequately alleged that Best Buy intended to defraud its customers.

Accordingly, the Court finds that Plaintiff adequately alleges a pattern of racketeering activity in the form of mail and wire fraud as predicate acts that occurred over a substantial period of time within the last ten years. See 18 U.S.C. § 1961(5).

**3. RICO Enterprise**

RICO's enterprise requirement is construed broadly, encompassing "any individual, partnership, corporation, association, or other legal entity, [or] any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); see Boyle v. United States, ---U.S. ----, ----, 129 S. Ct. 2237, 2243, 173 L. Ed. 2d 1265 (2009). The enterprise must be distinct from the individuals comprising it: "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). There is no requirement that the enterprise be a "business-like entity," but it must have a structure, which

consists of "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle, 129 S. Ct. at 2243-244. An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," which is "proved by evidence of ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981).

Best Buy argues that Plaintiff has not adequately alleged a RICO enterprise that is separate and distinct from Best Buy's ordinary business. Best Buy contends that Plaintiff's "formulaic recitations" constitute the entirety of Plaintiff's claim that Best Buy is distinct from the alleged RICO action:

> ¶ 52: ". . . Members of this Enterprise operate businesses that perform services distinct from the pattern of racketeering alleged herein."
>
> ¶ 53: "The Enterprise engages in, and its activities affect, interstate commerce and has an existence apart from the racketeering acts set forth herein."
>
> ¶ 54: "While all Defendants participate in and are members and part of the Enterprise, they also all have an existence separate and distinct from the Enterprise."

Best Buy asserts that "the best Plaintiff can muster to support the alleged RICO enterprise is the 'manufacture and selling of speakers and other audio equipment,'" which is "activity that is co-extensive with Best Buy's ordinary business."

The Amended Complaint, however, alleges that the enterprise not only consists of all Defendants, but also Best Buy Enterprise Services, Inc. and Peiying Electro-Acoustic. (Doc. 32 ¶ 52) Best Buy Co., Inc. and Best Buy Enterprise Services, Inc. together controlled the design and manufacture of the speakers, contracting with Peiying Electro-Acoustic. With Best Buy's tacit or express approval, the speakers were manufactured with a false driver. Best Buy Co., Inc. then worked with Best Buy Stores, L.P., BestBuy.com, LLC, and Peiying Electro-Acoustic to advertise and sell those speakers as 3-way speakers, in spite of their knowledge that the speakers were not as advertised. (Id. ¶ 55) As such, the Court finds that

Plaintiff has adequately alleged the existence of an enterprise comprised not only of Defendant Best Buy but of other non-defendant entities as well, that was allegedly engaged in fraudulent activity that was not co-extensive with Best Buy's ordinary business.

Best Buy also argues that Plaintiff fails to allege an enterprise with an ascertainable structure. As set forth above, an ascertainable structure consists of "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle, 129 S. Ct. at 2243-244. Best Buy concedes that "Plaintiff perhaps alleges a relationship between Best Buy and Peiying Electronic Acoustic Co.," however it contends that Plaintiff "fails to offer facts showing a common purpose or longevity of the enterprise."

In her Amended Complaint, Plaintiff alleges that "Best Buy, together with Best Buy Enterprise Services, Inc. and Peiying Electro-Acoustic, formed a scheme to defraud consumers by falsely representing 2-way speakers to be 3-way speakers." As such, the Court finds that Plaintiff's allegations are sufficient to allege a common purpose.

With respect to the requirement of longevity, Plaintiff alleges that Best Buy introduced the 3-way speaker models in question in approximately 2001. (Id. ¶ 21) Plaintiff alleges that she purchased one set at a Best Buy store in December 2007, and she purchased a second set on March 4, 2010, from the internet. (Id. ¶ 10) Even considering only the December 2007 and March 4, 2010 dates, this two-year-plus time span is more than sufficient to establish longevity. Cf. Odom, 486 F.3d at 553 (finding '[a]n almost two-year time span [] far more than adequate" to establish continuity).

**IV. Conclusion**

Based on the foregoing, the Court concludes that Plaintiff's Amended Complaint alleges "enough facts to state a claim for relief that is plausible on its face," Twombly, 550 U.S. at 570, to warrant the case to proceed to discovery. Accordingly,

**IT IS ORDERED** denying Best Buy's Motion to Dismiss Plaintiff's RICO claim. (Doc. 33)

**IT IS FURTHER ORDERED** directing the Clerk of Court to reassign this case.

DATED this 21st day of March, 2011.



Mary H. Murguia
United States District Judge